This time we'll hear Clark v. The Boeing Company. Thank you, Your Honor. May it please the Court. First, I was just notified this morning. I don't believe it's relevant, but within the past week or two, the plaintiff succumbed to his illness. I would say on the issue before the Court,  I believe, of course, that best practice would have been for the plaintiff or plaintiff's bankruptcy attorney to immediately notify the bankruptcy court upon the diagnosis or thereafter and before the discharge. The question, though, is the proportionality, the equitable aspect of wholly precluding the plaintiff's serious personal injury and now wrongful death claims based on a good faith effort at notifying bankruptcy counsel and having paid off 100% of the debt under the plan at the time of the diagnosis. Well, you say that he was sending in his last check to complete his obligations under the Chapter 13 filing at or about the same time as he received his diagnosis. Yes, Your Honor. At or about the same time as the lawsuit was started. Yes, Your Honor. That would have been in the summer. Yes. But the trustee says the last payment was made in December and the Chapter 13 report says it was made in February of the following year. Your Honor, the record shows that the first payment was due in August of 2010 and that there were 60 months of payments due. Therefore, mathematically, the last payment had to have been July when the plaintiff in his affidavit states that the last payment was due. The trustee states in her affidavit that the last payment came in in December and then in her final report, if you do the calculation, it goes to February. So the trustee was not precise. And the problem here is that in this motion to dismiss, the trial court looked at all of those facts in the light most favorable to the movement seeking a dismissal. But I think the most concrete fact here is that the first payment is shown to have occurred and been due in August. That's when it commenced. Let me ask you this. The bankruptcy court enters a discharge order in August of 2016. Yes, Your Honor. So at that point, Mr. Clark had known for, I guess, over a year of the diagnosis and had not disclosed it to the court. Would anything have happened differently during that one-year period from the time that he knew of it to the time of the discharge? No, Your Honor. And that is the opinion of the standing trustee in the District of Connecticut. Nothing? The bankruptcy trustee says it made no difference. That is correct. That is correct. And in Adelphia, we said that where something of this sort is de minimis, while it's the bankrupt's job to show that it's de minimis, we do not hold judicial estoppel. And that your argument is essentially that this is de minimis. Not that it is nothing, but it is de minimis because it made no difference whatever. Yes. And Adelphia also speaks about the issue being largely irrelevant to the bankruptcy or de minimis. Could, if creditors had known, could they have come in during that one-year period and asked for a revision of the payment terms? Would that have been possible? Well, I can't say it would have been totally impossible, but it would have been unnecessary, impracticable, and extraordinarily unlikely because there had been a 100% payment under the plan. All the creditors who made it to the plan from the ---- Yes, that's true, but the $18,000 creditor didn't make it into the plan, probably perhaps presuming that it didn't make, you know, it wasn't worth pursuing, but if it knew that there was a bundle of money, it might. Your Honor, all of the creditors had the responsibility under Bankruptcy Rule 3002 to file a proof of claim within the proof of claim period. The Home Depot, which is the missing amount debt, which the plaintiff believed he had on that Home Depot credit cards, was clearly listed on the initial bankruptcy petition. By the time of the plan, Home Depot had had ample time to file a proof of claim. It didn't, you know, have any reason to think that, oh, the money would be used up and there's no room . . . Home Depot was just like every other creditor and did not file for whatever reason, perhaps, you know. I have a different question. That is, the district court in this case said that lack of prejudice was irrelevant. Isn't that an error of law on our cases? That is, it is relevant. It isn't determinative, but it is relevant that if there is lack of prejudice or not. So isn't that an error in what the district court found, that it automatically treated it as being of no significance when the significance might be more or less depending on the whole circumstance of the case? Yes. I think the district court's assessment on that issue goes counter to all of this court's jurisprudence on the issues and this court's ways of analyzing the issues and was an error of law and that also, you know, tangentially for that reason, de novo review is appropriate here. I do want to say one thing. Whether a debtor informs promptly his or her bankruptcy counsel of a new asset or a new potential claim is also in this circuit treated as highly relevant to the overall analysis and significantly under the plan, which is appendix 1444, the debtor is informed by the court-approved plan that the debtor's bankruptcy counsel is in charge and has the responsibility and will be the one construing the plan. All questions should go to the bankruptcy counsel. So the debtor had all the reason in the world to believe at the time that by promptly and in good faith informing bankruptcy counsel, bankruptcy counsel was charged with a good faith carry forward of whatever the debtor had conveyed. When we speak in terms of unfair advantage, I'm not sure we're talking about evildoing or bad faith. The question I think is, is there somebody involved in the bankruptcy process who was getting shafted by this? And I take it your position is nobody was. No, I think it's pretty clear that nobody was. And it's an important point in contrast to this court's jurisprudence where the risk of an inconsistent result, the risk of an effect upon the integrity of the judicial process has to be certain. That is an element that this court's jurisprudence has added to the usual prejudice, unfair advantage elements that usually go with the judicial estoppel doctrine. I believe my time. Yes, well, we'll hear you on rebuttal. Thank you, Your Honor. Here are your adversaries. May it please the Court, Martin Gaynor, I represent the Boeing Company, and I'll be arguing for the other co-appellees this morning. The district court properly dismissed this case on judicial estoppel grounds. Now, it's important to understand, and this was pointed out by this court in the Adelphia case, judicial estoppel is primarily designed to protect the integrity of the judicial system, in this case and in particular, the bankruptcy system. It is not really geared as much towards fairness among the parties. May I just ask you a question? Yes, Your Honor. You say that this is discretionary rather than an over-review? Yes, I do, Your Honor, although . . . And it is discretionary because this is an equitable doctrine? Yes, Your Honor. If it is an equitable doctrine on the facts of this case, how can you stand there and argue that the equities don't run against you? I don't mean in every case, but in this case, how can you stand there and argue when he told his counsel, when it virtually makes no difference, when to say that this has an effect on the bankruptcy court, when the bankruptcy court trustee tells no, and when the difference between what is involved here is de minimis, and to this person, potentially millions of dollars, how can you stand there and say that the equities are on your way, if it is an equitable doctrine? Your Honor, here's how. And that's why I started with the statement I made. This is about protecting the integrity of the judicial system. Although the district court's decision predated this court's recent decision in BPP, Illinois, it is faithful to that analysis. It's a three-prong or two-prong and sometimes three-prong analysis. Number one, there are clearly inconsistent statements, because by failing to disclose the claim, and my brother admits that he was supposed to disclose the claim prior to discharge, the first element is that. You've got it. Let's go to the second element. All right. The second element, the adoption, it was adopted by virtue of the fact that he knew for a year, his counsel knew for a year before the discharge entered. It has to be adopted by the court. Correct. It has to be adopted by your court, not by Mr. Clark. Understood, Your Honor. But the court issues the discharge. What did the court do by way of adoption? It issued the discharge. It issued the discharge. And as my brother just said, if this claim was ‑‑ if notice of the claim was provided, if the schedules were amended, he can't say, and I agree with him, that some of the creditors, for example, Home Depot, may not have taken some action. What about the trustee's statement? The trustee's statement is irrelevant here for the following reason. The last element in BPP Illinois, as Your Honor said, is sometimes invoked, is unfair advantage. The plaintiff here, and I agree, Your Honor, it's a very difficult case, but obtained an unfair advantage because he obtained a discharge without following the disclosure rules. And to answer Your Honor's question, the reason the trustee's affidavit does not matter is that we can't get into retrospective analyses in a district court of what the consequences may or may not have been if the disclosure requirements were followed. Was there any prejudice to anyone here from the nondisclosure? Again, in Adelphia, it's not ‑‑ Was there any prejudice? We'll never know for sure, Your Honor.  Should we have equitable doctrine? Should we talk about the possibility that there might be prejudice where we can't say what it would be because they wouldn't have been paid any sooner if they had gotten in and said that, and they were bound earlier to say what their debts were and to say them accurately, and they have no reason not to say the full extent of them when they were. So this possibility of prejudice without any overwhelms the fact that somebody who tells his lawyer about this in an equitable doctrine? I'm still ‑‑ Respectfully, Your Honor, I disagree for the reason I just said, which is he obtained the discharge without following the disclosure rules. That could have had consequences. It is not ‑‑ He actually tried to disclose, or at least he told his lawyer, and his lawyer didn't do it. There is case law that says judicial estoppel does not apply when there is a mistake or an unintentional ‑‑ Absolutely correct, Your Honor. Absolutely correct. But the record here is devoid of any evidence or real allegation of a good faith mistake or inadvertence for the following reason. The evidence is I told my lawyer. But here is what he says. And he didn't do anything with it. I understand. But he goes on at page A1392 to state in his affidavit, I do not know why my schedules were not updated. In a situation like this where the claim is dismissed, one would expect a fulsome explanation of the mistake or inadvertence from the lawyers involved, the bankruptcy lawyer or the lawyers handling the personal injury case who were. Maybe the lawyer assumed that since he was paying and had paid every dollar he owed on every claim that was filed plus interest and fees, that it would just be spinning wheels to file something saying that he has an inchoate claim on which he may never collect a dime and possibly not collect anything until long into the future. Then we would expect, one would expect, some kind of affidavit from him explaining that. For example. And that's why he says it would have been better to do it, but the consequences of not doing it that you are suggesting are so out of proportion to what is at stake here that, again, I find it difficult. I see a whole lot of ancient judges in equity pulling on their wigs. Two points on that, Your Honor. One, the Leahy case that's a district court case that the appellant submitted recently is instructive on this point because in that case the bankruptcy lawyer testified that it was a mistake and he tried twice to reopen the bankruptcy case to amend the schedules to identify the claim. Here in context. What could Mr. Clark have done? Mr. Clark was represented by counsel. That means Mr. Clark couldn't walk in and do anything. So what could he do other than tell his lawyer? What more could he do? He couldn't have done anything more. But his lawyers, who knew for at least a year prior to the termination of the bankruptcy, did nothing. Ironically, if you look at the appellant's brief when they argue that the couple of defendants who didn't join in the motion should be dismissed, he said, look, they saw the motion. They sat idly by for a long period of time. The only reasonable conclusion from that is that it's intentional. There's no point in accusing lawyers of hypocrisy. I understand. But the logic applies the same. It's like they knew for a very, very long period of time and for whatever reason elected not to disclose the claim. You just said for whatever reason. But one reason could be there would be nothing but the spinning of wheels and the filing of papers that would make no difference, according to the trustee. Respectfully, if that was their logic, it is inconsistent with federal bankruptcy law. And if that was their logic, then the plaintiff will have recourse against them for that mistake. Again, it's a difficult case. I respect that. But the issue here is judicial estoppel is made to protect the integrity of the judicial system. How was the integrity of the courts undermined in any way? Because the plaintiff received a discharge without following the disclosure rules. And that means that you have a closed bankruptcy case, and now in a subsequent U.S. District Court case, there's going to get into this analysis about what the possible consequences could have been in the bankruptcy case about disclosure. That is not something that helps the integrity of the bankruptcy system. Respectfully, it undermines it. Thank you. Thank you. Good morning. May it please the Court. Bradley Wanner for Appellee Primazine Communications Cables and Systems, USA LLC. The issue that I'd like to address is the argument raised by the appellants that Primazine should not benefit from the courts, the district courts' invocation of judicial estoppel because it did not either join the motion or raise it as an affirmative defense. It is an affirmative defense. Yes, Your Honor. It is an affirmative defense. What happens when you don't assert an affirmative defense? The court may choose to either decide that the defendant has waived it or may apply it in this case because judicial estoppel is a unique defense that is— Your clients did assert estoppel. They asserted estoppel without specifying whether it was collateral estoppel, equitable estoppel, or judicial estoppel. They asserted just an estoppel defense, a general estoppel defense. And the nature of judicial estoppel specifically is that it protects, as my co-counsel has stated, the integrity of the courts. And what courts have— You know, maybe you'll just have to rely on us sitting here to protect the integrity of the courts. That's very well, and I'd be very pleased to rely on Your Honors to protect the integrity of the courts. Your argument basically is that since the people who did object have no real claim, you shouldn't be treated any worse than they are when you have no real claim either. Yes. Yes, Your Honor. Essentially, our fate lies with the fate of the rest of the appellees. Yeah, but you're in this—that your claim is as good as theirs is. Yes, exactly. Our claim is just as good as theirs. Just as good. I'm inclined to agree with you. Essentially because if the appellants don't have a claim against the Boeing company or those defendants, they don't have a claim against any of the defendants. Courts have held that a district court may apply judicial estoppel if it's not raised as an affirmative defense, that it's within the discretion of the court to do so given the nature of the defense. Thank you. Thank you. Thank you. Thank you, Your Honor. I have very little to add. Counsel seemed to rely in argument on Adelphia and the BPP case. BPP involved a hotel fraud claim that arose pre-confirmation as opposed to, in the present case, post-consummation. And also in BPP, it was important to this court that the plaintiff had disclosed other suits, but for whatever reason failed to disclose the suit at bar pre-confirmation. And so that was an indication of some sort of intent to conceal. I wasn't able in my initial argument to cite to the page of the appendix showing that the first payment from the plaintiff was due August 19th, 2010. And that page is appendix page 1449, which clearly shows that date as the first payment with a 60-month parameter. The defendant's brief states that the estoppel doctrine is fact-intensive. That's a point that defendants rely on heavily. One interesting corollary to that is that the plaintiff's deposition was taken by the defendants in August of 2016, after at least one or more of the defendants believed that there had been a bankruptcy. You argued, I think, in the alternative that maybe we ought to stay our hand for a while and see if you can, notwithstanding all the time intervening, reassert the claim here after seeking reopening in the bankruptcy court. How would that work procedurally? And how long would that take? Your Honor, I'm really not steeped in bankruptcy law. I don't know. I just know that the bankruptcy rules- Are you sufficiently steeped to know that what you're suggesting in your brief can be done? I'm not sure that it can be done. I believe that it has been done. Well, if it has been done, then I guess it can be done. I know that there's one rule saying that a bankruptcy case can be opened until the discharge occurs. The discharge has occurred. Yes. And so, yeah, no, I understand that, Your Honor. I'm just-I believe that, nevertheless, it's possible to approach the bankruptcy court if there's a reason to. I think that our cases on judicial estoppel and bankruptcy have tended to say that is not the way out, you know, just because it is so difficult. So I don't think that's a very good way to go. Yes, I would tend to agree with that. I think it was just a possibility that- It seemed like a good idea at the time. Yeah. Thank you, Your Honor. Thank you all. We will reserve decision.